**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF FLORIDA**

**DEWEY DESTIN, an individual; and EDGEWATER BEACH OWNERS ASSOCIATION, INC. a Florida condominium owners association, on their own behalf and on behalf of all others similarly situated,**

       **Plaintiffs,**

**vs.**

**BP, PLC; BP PRODUCTS NORTH AMERICA, INC.; BP AMERICA, INC.; TRANSOCEAN, LTD.; TRANSOCEAN OFFSHORE DEEPWATER DRILLING, INC.; TRANSOCEAN DEEPWATER, INC.; HALLIBURTON ENERGY SERVICES, INC. and CAMERON INTERNATIONAL CORPORATION F/K/A COOPER CAMERON CORPORATION,**

       **Defendants.**

**CASE NO.**

**CLASS ACTION**

**CLASS ACTION COMPLAINT**

COME NOW, Plaintiffs DEWEY DESTIN and EDGEWATER BEACH OWNERS ASSOCIATION, INC., on their own behalf and on behalf of all others similarly situated ("Plaintiffs") and file this action against Defendants, BP, PLC; BP PRODUCTS NORTH AMERICA, INC.; BP AMERICA, INC.; TRANSOCEAN, LTD.; TRANSOCEAN OFFSHORE DEEPWATER DRILLING, INC.; TRANSOCEAN DEEPWATER, INC.; HALLIBURTON ENERGY SERVICES, INC. and CAMERON INTERNATIONAL CORPORATION F/K/A

COOPER CAMERON CORPORATION, collectively referred to herein after as "Defendants" and allege as follows:

## INTRODUCTION

1.      This is a class action filed under Rule 23 of the Federal Rules of Civil Procedure to address shared concerns within the class area resulting from the massive approaching oil slick created by Defendants. Defendants, through their action and inaction, have caused and are causing discharges of pollutants from the now destroyed Deepwater Horizon mobile offshore drilling unit beginning with the explosion of April 20, 2010. Plaintiffs and others similarly situated within coastal Okaloosa and Walton Counties desperately do not want their priceless local environmental heritage and hard-earned private properties and businesses invaded by Defendants' pollutants.

2.      Coastal Okaloosa and Walton Counties are contiguous counties with citizenry having common claims for relief arising from the approaching environmental disaster caused by Defendants. Most importantly at this time, this citizenry can and should be commonly protected against this environmental disaster, using Defendants' funds, to lessen damages arising from the oil spill.

3.      Historically and economically, coastal Okaloosa and Walton Counties share a host of unique ties, including frequently noted world-class sugar sand beaches, a regional airport that is a major shared tourist conduit, the Greater Destin metropolitan area, the renowned Destin fishing fleet and adjacent near shore and offshore Gulf fishing areas, and a shared community college.

4.      Critically for near term purposes, physically these counties border the Gulf of Mexico to the immediate south and are conjoined in an east-west direction by 25-mile wide

Choctawhatchee Bay. The Bay's sole direct surface water connection to the Gulf of Mexico is the extremely narrow East Pass (also known as Destin Pass) in Okaloosa County. Further, the Choctawhatchee River and numerous local bayous and other tributaries receive tidal flows from Choctawhatchee Bay and the Gulf of Mexico through East Pass.

5.      Defendants can and should immediately bring to the scene, or provide funding for the class under Court oversight to bring to the scene, protective barriers to be on hand to put in place across Destin Pass, across Santa Rosa Sound to the west, and along oceanfront Okaloosa and Walton counties beginning immediately east of the Air Force property on Santa Rosa Island. While the damage from the approaching disaster would still be significant, properly designed barriers could allow Plaintiffs and the class to avoid or minimize substantial irreparable harm and minimize the damages.

6.      Further, this class should be entitled to have reliable and trustworthy class representatives of good reputation and unquestionable ties to this immediate and unique class area. The class also needs qualified counsel committed to the class area, and advocating for the full gamut of relief the class truly wants and needs.

7.      Now is not the time for this distinct, pristine, and somewhat protectable class area to be unnecessarily placed at further risk or lost in the shuffle of competing statewide or out-of-state class actions solely focused on collecting money damages in the distant future. To assure that this class is protected, and its unique needs represented with due expediency, this class should be quickly given separate treatment from those pure damage class actions that ultimately may be recognized in the wake of this disaster.

## PARTIES

8.      Plaintiff DEWEY DESTIN is an individual residing in Destin, Florida, who owns waterfront real property located on Joe's Bayou within the tidal influence of Choctawhatchee Bay, is a member of the pioneer family after whom Destin is named, and is a life-long resident of Okaloosa County and serves on the Destin City Council.    Dewey Destin owns and operates various businesses and restaurants in Destin, Florida associated with the tourism, fishing and seafood industries.

9.      Plaintiff, EDGEWATER BEACH OWNERS ASSOCIATION, INC. ("EBOA") is a Florida corporation which operates as a condominium association and which has its principal place of business in Walton County, Florida. EBOA is located and owns Gulf front real property in Miramar Beach, Walton County, Florida.

10.     Defendant BP, PLC ("BP") is a foreign corporation doing business in the State of Florida.

11.     Defendant BP PRODUCTS NORTH AMERICA, INC. ("BP Products") is a foreign corporation doing business in the State of Florida.

12.     Defendant BP AMERICA, INC. ("BP America") is a foreign corporation doing business in the State of Florida.

13.     Defendant TRANSOCEAN, LTD. ("Transocean, Ltd.") is a foreign corporation doing business in the State of Florida.

14.     Defendant TRANSOCEAN OFFSHORE DEEPWATER DRILLING, INC. ("Transocean Offshore") is a foreign corporation doing business in the State of Florida.

15.     Defendant TRANSOCEAN DEEPWATER, INC. ("Transocean Deepwater") is a foreign corporation doing business in the State of Florida.

16.     Defendant HALLIBURTON ENERGY SERVICES, INC. ("Halliburton") is a foreign corporation doing business in the State of Florida.

17.     Defendant CAMERON INTERNATIONAL CORPORATION F/K/A COOPER CAMERON CORPORATION ("Cameron") is a foreign corporation doing business in the State of Florida.

## JURISDICTION AND VENUE

18.     This Court has jurisdiction over this class action: under 28 U.S.C. § 1332, because the matter in controversy exceeds $75,000, exclusive of interest and costs, and because there is complete diversity of parties; under 28 U.S.C. § 1331, because the claims asserted herein arise under the laws of the United States of America, including the laws of the State of Florida, which have been declared, pursuant to 43 U.S.C. §§ 1331 (f)(1) and 1333(a)(2), to be the law of the United States for that portion of the outer Continental Shelf from which the oil spill originated; under 43 U.S.C. § 1331(1), which extends exclusive federal jurisdiction to the outer Continental Shelf; and under 28 U.S.C. §§ 2201-2202, which provides for federal declaratory actions and related relief.

19.     Venue in this District is proper under 28 U.S.C. § 1391(a) because a substantial portion of the events and omissions giving rise to the claims asserted herein, and all of the property that is the subject of this action, lie in this district.

## FACTUAL ALLEGATIONS

20.     A massive and ongoing oil spill that resulted from the explosion and fire aboard, and subsequent sinking of the oil rig Deepwater Horizon ("Deepwater Horizon" or "Oil Rig") occurred on April 20, 2010, at about 10:00 p.m. central time on the outer Continental Shelf, off the Louisiana coast. Following the sinking of the Deepwater Horizon, thousands of barrels per

day of crude oil have been leaking from the oil well upon which the Deepwater Horizon was performing completion operations, and from the pipe connected to it (drill stack). The pollutants comprising the resulting and ever expanding oil slick, which so far has grown to the size of Puerto Rico, are headed towards the class area.

21.     BP, BP Products and BP America (collectively "BP") are the holders of a lease granted by the Minerals Management Service ("MMS") allowing BP to drill for oil and perform oil-production-related operations at the site of the oil spill, and on April 20, 2010 operated the oil well that is the source of the oil spill.

22.     Transocean, Ltd., Transocean Offshore and Transocean Deepwater (collectively "Transocean") are the owners or operators of the Deepwater Horizon, a semi-submersible mobile drilling rig, which on April 20, 2010, was performing completion operations for BP, BP Products and BP America on the outer Continental Shelf where the oil spill now originates.

23.     Upon information and belief, Cameron manufactured or supplied the Deepwater Horizon's blow-out-preventers ("BOP's") that failed to operate upon the explosion, which should have prevented the oil spill. The BOP's were defective, among other things, because they failed to operate as intended.

24.     Halliburton was engaged in cementing operations of the well and well cap and, upon information and belief, improperly and negligently performed these duties, increasing the pressure at the well and contributing to the fire, explosion and resulting oil spill.

25.     At all times material hereto, the Deepwater Horizon was owned, manned, possessed, managed, controlled, chartered or operated by Transocean or BP.

26.     The fire and explosion on the Deepwater Horizon, its sinking and the resulting oil spill were caused by the negligence of Defendants, rendering them jointly and severally liable to Plaintiffs and the Class Members for injunctive relief and all their damages.

27.     The injuries and damages suffered by Plaintiffs and other members of the class were and are caused by Defendants' negligence and its violations of numerous statutes and regulations, including, but not limited to, statutes and regulations issued by OSHA and the United States Coast Guard, including the requirement to test the sub-sea BOP's at regular intervals.

28.     Defendants knew of the dangers associated with deep water drilling and failed to take appropriate measures to prevent damage to Plaintiffs and other members of the class, who own real property in the class area and are dependent upon such property to make a living.

29.     The oil plume will not self-remediate, is spreading pollutants across the Gulf of Mexico, and imminently threatening the class area.

30.     The oil plume has caused and will continue to cause loss of revenue to Plaintiffs and others similarly situated, who are diminished in the use of their properties and adjoining marine waters, including the Gulf of Mexico.

## CLASS ALLEGATIONS

31.     Plaintiffs bring this action on behalf of themselves and all others similarly situated, who are members of the following Class:

(a)    All persons or entities who own or lease real property within Okaloosa or Walton County, Florida south of Interstate 10; AND

(b)    All persons or entities who have businesses based within Okaloosa or Walton County, Florida south of Interstate 10, including, but not limited to, fishing-related businesses emanating from Okaloosa or Walton County, Florida south of Interstate 10.

32.     *Prerequisites under Federal Rule of Civil Procedure 23(a)(1)-(4)*:

(a)     The proposed class is so numerous that joinder of all members is impracticable, as the members of the class number in the thousands.

(b)     There are questions of law or fact common to the class, specifically including all fact questions pertaining to the allegations of fact pertaining to liability contained in this complaint, as well as all legal questions pertaining to the allegations of law contained in this complaint, including the claims for relief contained below.

(c)     the claims of Plaintiffs are typical of the claims of the class, and any defenses to the claims would be typical of the claims of the class.

(d)     the representative parties will fairly and adequately protect the interests of the class.

33.     Under Rule 23(b)(1)(A) and (B), prosecuting separate actions by Plaintiffs and the other class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the parties opposing the class, as well as adjudications with respect to individual class members that, as a practical matter would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

34.     Under Rule 23(b)(2), the parties opposing the class have acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

35.     Under Rule 23(b)(3), taking into account pertinent factors under (A)-(D) thereof, questions of law or fact common to class members predominate over any questions affecting

only individual class members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The interests of the class members, based on the herein proposed relatively narrow class definition applying only within coastal Okaloosa and Walton Counties, are aligned, and individual class members would not need to individually control the prosecution of separate actions in order to reasonably pursue and protect such interests. On the contrary, their interests would be well served by not controlling the prosecution of separate actions, which would be highly inefficient and not present significant value added for a class of this size and orientation. Moreover, although various class actions recently have been filed in and out of Florida purporting to represent all or part of the class, along with numerous others not in the class, the nature of these class actions is geared exclusively to money damages, and moreover, not targeted at the specific reasonable needs and expectations of this specific class. Thus, other class actions are not likely to serve the interests of the class to the same degree as this action. In addition, it is desirable to concentrate this particular litigation in this District, the federal forum closest to the affected class and in the best position to assess the particular needs and interests of the class, including most importantly as to injunctive relief. Nonetheless, in the event this action is transferred to another forum, the other factors strongly weigh in favor of Rule 23(b)(3) certification, even without crediting for Rule 23(b)(3)(C). Finally, this class action would be far less likely to have manageability difficulties than larger class actions purporting to represent statewide or multistate classes.

36.     The undersigned proposed class counsel likewise should be appointed as class counsel for this class. The counsel have worked diligently to identify and investigate potential claims for relief based on threats urgently bearing upon the interests of the class. They have devised an overall approach that will serve the best interests of the class, including through

common pursuit of injunctive relief and common fund mitigation not addressed in other class actions and relating to the geography of this particular class area. The counsel are experienced in handling class actions, other complex litigation, and the types of claims asserted in this action, are knowledgeable of the applicable law, and will commit the resources needed to represent the class. By their experience and conduct, they have demonstrated that they are best able to represent the interests of this particular narrowly tailored class.

### *FIRST CLAIM FOR RELIEF*

### **TEMPORARY AND PERMANENT INJUNCTIVE RELIEF**

37.     Paragraphs 1-36 above are incorporated herein by reference.

38.     Plaintiffs and others similarly situated will suffer permanent irreparable harm if their properties are allowed by Defendants to be invaded by the pollutant Defendants have negligently discharged.

39.     Plaintiffs and others similarly situated have no adequate remedy at law to protect their properties.

40.     Defendants individually or collectively have the financial wherewithal to protect Plaintiffs and others similarly situated. Such protection readily and reasonably could occur either by Defendants directly providing needed protection or by Defendants being ordered to establish under court supervision a fund for providing such protection.

41.     Public policy and the equities strongly favor such measures.

WHEREFORE, Plaintiffs request:

A.     Class certification as requested herein;

B.     Injunctive relief;

C.      Establishment of a court-administered fund to ensure timely prophylactic remedies are in place to protect Plaintiffs and the class;

D.      Compensatory, economic, and punitive damages;

E.      Pre-judgment and post-judgment interest at the maximum rate allowable by law;

F.      Attorney's fees and costs of litigation;

G.      All other actions deemed just or appropriate by the Court; and

H.      Trial by jury as to all Defendants of all issues so triable.

### *SECOND CLAIM FOR RELIEF*

### DECLARATORY JUDGMENT CONCERNING STRICT LIABILITY UNDER FLORIDA'S POLLUTANT DISCHARGE PREVENTION AND CONTROL ACT, AND UNDER SECTIONS 376.30-376.317, FLORIDA STATUTES

42.      Paragraphs 1-36 above are incorporated herein by reference.

43.      The Deepwater Horizon oil rig is a no longer functioning mobile offshore drilling unit that was placed over a deep ocean oil well, to which it was connected by pipeline. The pipeline has now been severed, causing the major and continuing discharge of pollutants. The immediate discharge is occurring into waters outside the territorial limits of Florida; however, lands and waters within the territorial limits of Florida, and specifically lands and waters within the class area, are reasonably expected to be directly affected by the discharge.

44.      Plaintiffs have a real, immediate, and bona fide need for a preventative adjudication of whether under these circumstances Defendants will be strictly liable under Florida's Pollutant Discharge Prevention and Control Act, Sections 376.011-376.21, Florida Statutes. This act provides for strict liability for destruction to or loss of real or personal property, along with reasonable attorney's and expert witness fees. See §§ 376.031(5), 376.12(5), and 376.205, Fla. Stat.

45. The foregoing act is specifically concerned with protecting Florida's coastal waters, <u>see</u> Section 376.021, Florida Statutes, and is separate from and in addition to any strict liability under Section 376.313(3), Florida Statutes. Nonetheless, while Section 376.313(3) comes within a portion of Chapter 376, Florida Statutes, <u>see</u> Sections 376.30-376.317, that, among other things, protects potable water sources, <u>see</u>, <u>e.g.</u>, Section 376.30(1)(b), its language ("a cause of action in a court of competent jurisdiction for all damages resulting from a discharge or other condition of pollution covered by ss. 376.30-376.317") is broad. This language has been flexibly interpreted by Florida state courts and is not by its terms limited to fresh water surface or groundwater sources. Thus, Plaintiffs likewise have a real, immediate, and bona fide need for a preventative adjudication of whether under these circumstances Defendants will be strictly liable under Section 376.313(3), as well as subject to reasonable attorney's and expert witness fees under Section 376.313(6).

46. Preventative adjudication of these Florida statutes is necessary and would be greatly and presently beneficial to Plaintiffs and the class because the uncertainty created by Defendants' conduct goes to the constitutionally protected property rights of Plaintiffs and the class. The uncertainty created by Defendants' conduct undermines the policy reasons for having property and property rules in the first place. Forcing Plaintiffs and the class to engage in "discounting" of their property rights while they wait for Defendants' contamination to arrive would be thoroughly inadequate. Further preventative adjudication would encourage the timely implementation by Defendants of prophylactic remedies to protect the property rights of the class so as to avoid or minimize remedial adjudication under these laws.

WHEREFORE, Plaintiffs request:

A. Class certification as requested herein;

B.      Declaratory judgment under 28 U.S.C. § 2201(a) concerning the foregoing laws;

C.      Further necessary or proper relief under 28 U.S.C. § 2201(b) based on any declaratory judgment or decree which is issued;

D.      Injunctive relief;

E.      Establishment of a court-administered fund to ensure timely prophylactic remedies are in place to protect Plaintiffs and the class;

F.      Compensatory, economic, and punitive damages;

G.      Pre-judgment and post-judgment interest at the maximum rate allowable by law;

H.      Attorney's fees and costs of litigation;

I.      All other actions deemed just or appropriate by the Court; and

J.      Trial by jury as to all Defendants of all issues so triable.

### *THIRD CLAIM FOR RELIEF*

### COMMON LAW NEGLIGENCE,

### <u>GROSS NEGLIGENCE AND WILLFUL MISCONDUCT</u>

47.     Paragraphs 1-36 above are incorporated herein by reference.

48.     The fire, explosion and resulting oil spill were caused by the concurrent negligence of the Defendants.

49.     Upon information and belief, Plaintiffs allege that the fire, explosion and resulting oil spill were caused by the joint negligence and fault of the Defendants, by among other things, failing to properly operate the Deepwater Horizon; operating the Deepwater Horizon in such a manner that a fire and explosion occurred onboard, causing it to sink and resulting in an oil spill; failing to properly inspect the Deepwater Horizon to assure that its equipment and personnel were fit for their intended purpose; acting in a careless and negligent manner without due regard

for the safety of others; failing to promulgate, implement and enforce rules and regulations pertaining to the safe operations of the Deepwater Horizon which, if they had been so promulgated, implemented and enforced, would have averted the fire, explosion, sinking and oil spill; operating the Deepwater Horizon with untrained and unlicensed personnel; inadequate and negligent training and hiring of personnel; failing to take appropriate action to avoid or mitigate the accident; negligently implementing policies and procedures to safely conduct offshore operations in the Gulf of Mexico; employing untrained or poorly trained employees and failing to properly train their employees; failing to ascertain that the Deepwater Horizon and its equipment were free from defects and/or in proper working order; failing to timely warn; failing to timely bring the oil release under control; failing to provide appropriate accident prevent equipment; failing to observe and read gauges that would have indicated excessive pressures in the well; failing to react to danger signs; providing BOP's that did not work properly; conducting well and well cap cementing operations improperly; acting in a manner that justifies imposition of punitive damages; and such other acts of negligence and omissions as will be shown at the trial of this matter, all of which acts are in violation of the laws of Florida and Federal law applicable on the outer Continental Shelf.

50.     In addition, and in the alternative, the fire, explosion, sinking and resulting oil spill were caused by defective equipment, including the BOP's, which were in the care, custody, and control of Defendants. Defendants knew or should have known of these defects and Defendants are, therefore, liable for them.

51.     The injuries to Plaintiffs and the class were also caused by or aggravated by the fact that Defendants failed to take necessary actions to mitigate the danger associated with their operations.

52.     In addition to the negligent actions described above, and in the alternative thereto, the injuries and damages suffered by Plaintiffs and the class were caused by the acts and omissions of the Defendants that are beyond proof by the Plaintiffs and the class, but which were within the knowledge and control of the Defendants, there being no other possible conclusion than that the fire, explosion, sinking and oil spill resulted from the negligence of Defendants. Furthermore, the fire, explosion, sinking and the resulting oil spill would not have occurred had the Defendants exercised the high degree of care imposed on them. Plaintiffs, therefore, plead the doctrine of res ipsa loquitur.

53.     Moreover, Defendants were and are responsible for the foregoing acts and omissions under egregious circumstances, with utter awareness of their placement of innocent persons and properties, including the public at large, at great risk of injury, loss, or damage. Defendants knowingly cut corners to save money and keep revenue streams from the Deepwater Horizon flowing. It was fully capable and aware of readily available measures to avoid or minimize a disaster of this kind but neglected to do so for profit. It gambled, and the public, including Plaintiffs and the class, have lost. Therefore, in addition and in the alternative, Defendants' acts and omissions constitute both gross negligence and willful misconduct.

WHEREFORE, Plaintiffs request:

A.     Class certification as requested herein;

B.     Injunctive relief;

C.     Establishment of a court-administered fund to ensure timely prophylactic remedies are in place to protect Plaintiffs and the class;

D.     Compensatory, economic, and punitive damages;

E.     Pre-judgment and post-judgment interest at the maximum rate allowable by law;

F.      Attorney's fees and costs of litigation;

G.      All other actions deemed just or appropriate by the Court; and

H.      Trial by jury as to all Defendants of all issues so triable.

### FOURTH CLAIM FOR RELIEF

### LIABILITY UNDER THE FEDERAL OIL POLLUTION ACT, INCLUDING UNCAPPED LIABILITY FOR GROSS NEGLIGENCE AND WILLFUL MISCONDUCT

54.      Paragraphs 1-36 above are incorporated herein by reference.

55.      The fire, explosion and resulting oil spill were caused by the concurrent negligence of the Defendants.

56.      Upon information and belief, Plaintiffs allege that the fire, explosion and resulting oil spill were caused by the joint negligence and fault of the Defendants, by among other things, failing to properly operate the Deepwater Horizon; operating the Deepwater Horizon in such a manner that a fire and explosion occurred onboard, causing it to sink and resulting in an oil spill; failing to properly inspect the Deepwater Horizon to assure that its equipment and personnel were fit for their intended purpose; acting in a careless and negligent manner without due regard for the safety of others; failing to promulgate, implement and enforce rules and regulations pertaining to the safe operations of the Deepwater Horizon which, if they had been so promulgated, implemented and enforced, would have averted the fire, explosion, sinking and oil spill; operating the Deepwater Horizon with untrained and unlicensed personnel; inadequate and negligent training and hiring of personnel; failing to take appropriate action to avoid or mitigate the accident; negligently implementing policies and procedures to safely conduct offshore operations in the Gulf of Mexico; employing untrained or poorly trained employees and failing to properly train their employees; failing to ascertain that the Deepwater Horizon and its equipment were free from defects and/or in proper working order; failing to timely warn; failing

to timely bring the oil release under control; failing to provide appropriate accident prevent equipment; failing to observe and read gauges that would have indicated excessive pressures in the well; failing to react to danger signs; providing BOP's that did not work properly; conducting well and well cap cementing operations improperly; acting in a manner that justifies imposition of punitive damages; and such other acts of negligence and omissions as will be shown at the trial of this matter, all of which acts are in violation of the laws of Florida and Federal law applicable on the outer Continental Shelf.

57.     In addition, and in the alternative, the fire, explosion, sinking and resulting oil spill were caused by defective equipment, including the BOP's, which were in the care, custody, and control of Defendants. Defendants knew or should have known of these defects and Defendants are, therefore, liable for them.

58.     The injuries to Plaintiffs and the class were also caused by or aggravated by the fact that Defendants failed to take necessary actions to mitigate the danger associated with their operations.

59.     In addition to the negligent actions described above, and in the alternative thereto, the injuries and damages suffered by Plaintiffs and the class were caused by the acts and omissions of the Defendants that are beyond proof by the Plaintiffs and the class, but which were within the knowledge and control of the Defendants, there being no other possible conclusion than that the fire, explosion, sinking and oil spill resulted from the negligence of Defendants. Furthermore, the fire, explosion, sinking and the resulting oil spill would not have occurred had the Defendants exercised the high degree of care imposed on them. Plaintiffs, therefore, plead the doctrine of res ipsa loquitur.

60.     Moreover, Defendants were and are responsible for the foregoing acts and omissions under egregious circumstances, with utter awareness of their placement of innocent persons and properties, including the public at large, at great risk of injury, loss, or damage. Defendants knowingly cut corners to save money and keep revenue streams from the Deepwater Horizon flowing. It was fully capable and aware of readily available measures to avoid or minimize a disaster of this kind but neglected to do so for profit. It gambled, and the public, including Plaintiffs and the class, have lost. Therefore, in addition and in the alternative, Defendants' acts and omissions constitute both gross negligence and willful misconduct.

61.     Defendants are liable to Plaintiffs and the class under the federal Oil Pollution Act, 33 U.S.C. §§ 2701-2719. Specifically, under 33 U.S.C. § 2702(b)(2)(B), (C), and (F), Defendants are liable to Plaintiffs and the class for damages for injury to, or economic losses resulting from destruction of, real or personal property; damages for loss of subsistence use of natural resources; and damages equal to the loss of profits or impairment of earning capacity due to the injury, destruction, or loss of real property, personal property, or natural resources. In addition, or in the alternative, the foregoing damages are uncapped under 33 U.S.C. § 2704(c)(1)(A) because the incident was proximately caused by Defendants' gross negligence or willful misconduct.

WHEREFORE, Plaintiffs request:

A.      Class certification as requested herein;

B.      Injunctive relief;

C.      Establishment of a court-administered fund to ensure timely prophylactic remedies are in place to protect Plaintiffs and the class;

D.      Compensatory, economic, and punitive damages;

E.     Pre-judgment and post-judgment interest at the maximum rate allowable by law;

F.     Attorney's fees and costs of litigation;

G.     All other actions deemed just or appropriate by the Court; and

H.     Trial by jury as to all Defendants of all issues so triable.

### *FIFTH CLAIM FOR RELIEF*

### COMMON LAW STRICT LIABILITY

62.     Paragraphs 1-36 above are incorporated herein by reference.

63.     Defendant Cameron manufactured or supplied the Deepwater Horizon's BOP's.

64.     Defendant Cameron's BOP's failed to operate properly or at all, at the time of or following the explosion, and this failure caused or contributed to the oil spill.

65.     Defendant Cameron's BOP's were defective because they failed to operate as intended.

66.     As a result of the BOP's product defect, pollutants were released from or at the Deepwater Horizon rig, thereby causing injury to Plaintiffs and the class.

67.     Defendant Cameron's BOP's were in a defective condition and unreasonably dangerous to Plaintiffs when the BOP's left Defendant Cameron's control.

68.     At all times, Defendant Cameron's BOP's were used in the manner intended.

69.     In addition, or in the alternative, Defendants, as the owners or operators of the Deepwater Horizon rig, engaged in abnormally dangerous activities by the manner in which they maintained and operated the Deepwater Horizon. Defendants' activities resulted in the intentional, incidental or accidental fire, explosion, sinking, and resulting oil spill from the Deepwater Horizon rig, which created a high degree of risk of harm to others, including Plaintiffs and the class; created a risk involving a likelihood that the harm threatened by

Defendants' activities would be great; created a risk of harm that could not be eliminated by the exercise of reasonable care; were not a matter of common usage; and were inappropriate to the place that they were being carried on, in that they constituted a non-natural use of Defendants' oil lease which imposed an unusual and extraordinary risk of harm to Plaintiffs and the class.

70.     Further, as a direct and proximate result of Defendants' conduct in engaging in the abnormally dangerous activities alleged above, substantial amounts of crude oil have been released and continue to be released from the well leased by BP. The harm sustained by Plaintiffs and the class is exactly the kind of harm posed, the possibility of which made Defendants' activities abnormally dangerous.

WHEREFORE, Plaintiffs request:

A.     Class certification as requested herein;

B.     Injunctive relief;

C.     Establishment of a court-administered fund to ensure timely prophylactic remedies are in place to protect Plaintiffs and the class;

D.     Compensatory, economic, and punitive damages;

E.     Pre-judgment and post-judgment interest at the maximum rate allowable by law;

F.     Attorney's fees and costs of litigation;

G.     All other actions deemed just or appropriate by the Court; and

H.     Trial by jury as to all Defendants of all issues so triable.

DATED this 4th day of May 2010.

/s/ Michelle Anchors
Lawrence Keefe
Florida Bar No. 0602809
Michelle Anchors
Florida Bar No. 0932272
A. Benjamin Gordon

Florida Bar No. 0528617
KEEFE ANCHORS GORDON & MOYLE, P.A.
909 Mar Walt Drive, Suite 1022
Fort Walton Beach, FL 32547
Telephone:      (850) 863-1974
Facsimile:      (850) 863-1591

and

William F. Merlin, Jr.
Florida Bar No. 364721
MERLIN LAW GROUP, P.A.
777 South Harbour Island Boulevard, Suite 950
Tampa, Florida 33602
Telephone:      (813) 229-1000
Facsimile:      (813) 229-3692

Attorneys for Plaintiff